1  BENJAMIN B. WAGNER
United States Attorney
2  MATTHEW M. YELOVICH
Assistant United States Attorney
3  501 I Street, Suite 10-100
Sacramento, CA 95814
4  Telephone: (916) 554-2700
Facsimile:  (916) 554-2900
5
6  Attorneys for Plaintiff
United States of America

**FILED**

APR 1 4 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

7
IN THE UNITED STATES DISTRICT COURT
8
EASTERN DISTRICT OF CALIFORNIA
9

10  UNITED STATES OF AMERICA,

            Plaintiff,

12           v.

13  SERGIO ROMAN BARRIENTOS, and
ZALATHIEL AGUILA,

            Defendants.

CASE NO.  2:16-CR-0046 JAM

18 U.S.C. § 1349 – Conspiracy to Commit Wire
Fraud Affecting a Financial Institution and Bank
Fraud; 18 U.S.C. § 1343 – Wire Fraud Affecting a
Financial Institution (2 Counts); 18 U.S.C. § 1344(1)
– Bank Fraud; 18 U.S.C. § 371 – Conspiracy to Make
False Statements on Loan Applications; 18 U.S.C.
§ 1014 – False Statements on Loan Application;
18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and
18 U.S.C. § 982(a)(2)(A) - Criminal Forfeiture

S U P E R S E D I N G   I N D I C T M E N T

COUNT ONE:  [18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud Affecting a Financial
                        Institution and Bank Fraud]

The Grand Jury charges:

SERGIO ROMAN BARRIENTOS, and
ZALATHIEL AGUILA,

defendants herein, as follows:

## I.    **INTRODUCTION**

At all times relevant to this indictment:

1.      Defendant SERGIO ROMAN BARRIENTOS was a resident of Poway, in the State and

Southern District of California.

2.      Defendant ZALATHIEL AGUILA was a resident of Vallejo, in the State and Eastern

District of California.

SUPERSEDING INDICTMENT                                        1

1  3.  Omar Anabo, charged elsewhere, was a resident of Hercules, in the State and Northern

2  District of California.

3  4.  Downey Savings & Loan Association, F.A., was a financial institution, as that term is

4  defined in Title 18, United States Code, Section 20, the deposits of which were then insured by the

5  Federal Deposit Insurance Corporation ("FDIC"), and which engaged in, and the activities of which

6  affected, interstate commerce.

7  5.  Capital Access, LLC ("Capital Access"), was a company based at 1301 Tennessee Street

8  in Vallejo, in the State and Eastern District of California, and was operated by BARRIENTOS,

9  AGUILA, and Anabo.

10  6.  Sayraw Holdings was the name of a fictitious entity holding bank accounts, including a

11  checking account at Washington Mutual Bank, ending x2333, that was controlled by BARRIENTOS.

12  7.  Quest Financial Services, Inc., was a mortgage brokerage company based in Vallejo, in

13  the State and Eastern District of California, that was operated by Anabo.

14  **II.  THE CONSPIRACY**

15  8.  Beginning in or about September 2004, and continuing through at least in or about

16  February 2008, in the State and Eastern District of California and elsewhere, defendants SERGIO

17  ROMAN BARRIENTOS and ZALATHIEL AGUILA, and others known and unknown to the Grand

18  Jury, did knowingly and intentionally agree, combine, and conspire to execute, (1) through the use of

19  wire communications and signals in interstate commerce, a material scheme to defraud and to obtain

20  money and property by means of material false and fraudulent pretenses, representations, promises, and

21  the concealment of material facts, affecting a financial institution, in violation of Title 18, United States

22  Code, Section 1343, and (2) a material scheme to defraud, and to obtain moneys, funds, and credits from

23  federally insured financial institutions by means of materially false and fraudulent pretenses,

24  representations, and promises, in violation of Title 18, United States Code, Section 1344(1).

25  **III.  MANNER AND MEANS**

26  In furtherance of the conspiracy, BARRIENTOS, AGUILA, and Anabo (collectively, "the

27  conspirators") employed the following manner and means, among others:

28  9.  Capital Access, through the conspirators and its employees, would use a notice of default

1  list to target homeowners nearing default with advertising and solicitations (by mail, phone, or in

2  person) regarding the benefits of the Capital Access "Keep Your Home" foreclosure rescue program.

3      10.     As part of the solicitation, the conspirators would tell homeowners who were facing

4  default that the "Keep Your Home" program would bring in a "qualified investor" to help the

5  homeowners avoid foreclosure, keep the homeowners' homes, and repair the homeowners' credit during

6  a two-year period. The conspirators generally told the homeowners that bringing in a qualified investor

7  allowed the conspirators to "access" the homeowners' equity, which would then be used to make

8  housing payments, or settle debts on the homeowners' behalf during the first year of the two-year

9  program. Meanwhile, the homeowners would save and repair their credit, and would be responsible for

10 making housing payments to Capital Access during the second year of the program. The conspirators

11 told the homeowners that their home would be placed in a trust during the program, and that, at the end

12 of the program, the homeowners would have the opportunity to regain their home in full, and the

13 involvement of Capital Access would cease.

14      11.     During this homeowner recruitment process, the conspirators would make materially

15 false statements and omissions and conceal material facts in convincing the homeowners to sign over

16 title and all equity in their homes. These false statements included, among others, the following: that

17 (1) the homeowner would not be selling his or her home, (2) the homeowner's equity would be used

18 only for the homeowner's housing payments and other disclosed debt repayments, (3) the property

19 would be placed in a trust to protect the homeowners, (4) at the conclusion of the two-year program,

20 Capital Access would return the remaining equity to the homeowners, and/or (5) at that point, the

21 homeowner would refinance their home and regain full ownership without further involvement of

22 Capital Access.

23      12.     In fact, these statements to the homeowners were not true. Instead, first, the conspirators

24 executed a sale of the homeowner's property to a straw buyer. Second, the conspirators commingled the

25 homeowner's equity from the sale into Sayraw Holdings and Capital Access bank accounts and used

26 that equity not only for the homeowners' housing payments and debts, but also for, among other things,

27 personal expenses, operating costs, down payments for new properties entering the scheme, and other

28 costs unrelated to the homeowners. Third, the conspirators did not create trusts for the properties.

SUPERSEDING INDICTMENT                           3

1  Rather, at the conclusion of the transaction, title to the home was held by the straw buyer or, on some
2  occasions, was held by a holding company without the advertised protections for the homeowners.
3  Equity from the home was never placed in a trust. Fourth, the conspirators did not return equity to the
4  homeowners at the conclusion of the program. Finally, the conspirators knew that, at the conclusion of
5  the two-year program, it was highly unlikely that the homeowners would qualify for a new loan and
6  nearly impossible that the homeowners would regain full ownership of their home, but concealed these
7  realities from the homeowners.

8      13.    In addition to recruiting homeowners, the conspirators also recruited straw buyers. The
9  straw buyers were individuals with good credit who would act as buyers for the homes. In so doing, the
10  straw buyers would be the loan applicants to the banks. The conspirators conducted presentations and
11  went door-to-door to solicit straw buyer enrollment, often from friends and family. During this
12  recruitment, the conspirators told the straw buyers that they would be paid 1% of the purchase price of
13  the home or a flat fee as a payment for use of their name and credit score in obtaining a mortgage. In
14  addition, the conspirators told the straw buyers that they would not be responsible for occupying the
15  home, making mortgage payments, or contributing to the down payment for the home. Finally, the
16  conspirators advised the straw buyers that they could claim a tax deduction for the mortgage interest as
17  if they were making the mortgage payments themselves.

18      14.    At the direction of the conspirators, the straw buyers filled out loan applications sent to
19  financial institutions, some of which were federally insured. Anabo or his employees served as the
20  interviewer on the loan applications. The straw buyer, Anabo, his employees, and the conspirators
21  would make material false statements on the loan applications, knowing that the applications were going
22  to financial institutions. The straw buyer and interviewer would then sign the applications, verifying
23  that they were accurate. These false statements included, among others, the following: (1) that the
24  straw buyer intended to occupy the home as a primary residence, and (2) that no part of the down
25  payment was borrowed and that the straw buyer was the source of the down payment.

26      15.    In fact, these statements to the financial institutions were not true. Instead, the straw
27  buyers never intended to occupy the homes as primary residences—the scheme involved the
28  homeowners remaining in their homes. In addition, the entirety of the down payment came not from the

1  straw buyers, but, at least in part, from bank accounts held by Capital Access and Sayraw Holdings.

2  Based on, among other things, these false statements, federally insured financial institutions issued loans

3  to the straw buyers, and the property transactions closed. The equity realized from the home sales went

4  not to the homeowner, but to the conspirators. The federally insured financial institutions were exposed

5  to a new and increased risk of loss.

6      16.    In all, the conspirators caused approximately $27,025,635 in fraudulent home sales,

7  involving at least sixty-nine unique properties; caused financial institutions, some of which were then

8  federally insured, to issue at least approximately $23,993,106 in fraudulently-obtained property loans;

9  and caused an estimated actual loss to financial institutions of at least approximately $10,473,606.

10      All in violation of Title 18, United States Code, Section 1349.

11  COUNTS TWO AND THREE:  [18 U.S.C. § 1343 – Wire Fraud Affecting a Financial Institution]

12      The Grand Jury further charges:

13  SERGIO ROMAN BARRIENTOS, and<br>ZALATHIEL AGUILA,

14

15  defendants herein, as follows:

16      1.    Paragraphs 1 through 7 and 9 through 16 of Count One of this Indictment are

17  incorporated as if fully set forth herein.

18      2.    Beginning in or about September 2004, and continuing through at least in or about

19  February 2008, in the State and Eastern District of California and elsewhere, the defendants, and others

20  known and unknown to the Grand Jury, knowingly devised, intended to devise, participated in, and

21  executed, a material scheme to defraud and to obtain money and property by means of materially false

22  and fraudulent pretenses, representations, and promises, and the concealment of material facts, affecting

23  a financial institution.

24      3.    On or about the dates set forth below, in the Eastern District of California, for the purpose

25  of executing the aforementioned scheme and artifice to defraud, and attempting to do so, the defendants

26  did knowingly transmit and cause to be transmitted by means of wire communication in interstate

27  commerce certain writings, signs, signals, pictures, and sounds, as more specifically set forth below:

28  ///

SUPERSEDING INDICTMENT      5

| Count | Approx. Date | Wire Description |
|---|---|---|
| 2 | April 25, 2006 | Bank wire for $250,710.28 from Centennial Bank in Englewood, Colorado, account ending x6981, to Washington Mutual Bank in Poway, California, account ending x2333. |
| 3 | March 21, 2007 | Payoff quote faxed from Central Mortgage Company in Arkansas to Capital Access in California, regarding the loan amount due of $657,569.88 on property located at 145 Pavon in Hercules, California. |

All in violation of Title 18, United States Code, Sections 2 and 1343.

COUNT FOUR: [18 U.S.C. § 1344(1) – Bank Fraud]

The Grand Jury further charges:

SERGIO ROMAN BARRIENTOS, and
ZALATHIEL AGUILA,

defendants herein, as follows:

1. Paragraphs 1 through 7 and 9 through 16 of Count One of this Indictment are incorporated as if fully set forth herein.

2. Beginning in or about September 2004, and continuing through at least in or about February 2008, in the State and Eastern District of California and elsewhere, the defendants, and others known and unknown to the Grand Jury, knowingly executed and attempted to execute, a material scheme to defraud, and to obtain moneys, funds, and credits from federally insured financial institutions by means of materially false and fraudulent pretenses, representations, and promises.

3. On or about April 15, 2006, in the State and Eastern District of California, for the purpose of executing and attempting to execute the aforementioned scheme to defraud, defendants SERGIO ROMAN BARRIENTOS and ZALATHIEL AGUILA knowingly made and caused to be made a loan application for 727 Highland Place, San Dimas, California, to a federally insured financial institution, to wit, Downey Savings & Loan Association, F.A., that contained material false statements, including, that (1) the loan applicants would occupy the property as their primary residence, and (2) that the loan applicants for the property would provide the money for the down payment for the home, when in fact the defendants knew that the representations were false, in violation of Title 18, United States Code, Sections 2 and 1344(1).

SUPERSEDING INDICTMENT

6

1  COUNT FIVE:  [18 U.S.C. § 371 – Conspiracy to Make False Statements on Loan Applications]

2  　　The Grand Jury further charges:

3  　　　　　　　　　　SERGIO ROMAN BARRIENTOS, and
　　　　　　　　　　　　ZALATHIEL AGUILA,

4

5  defendants herein, as follows:

6  　　1.　　Paragraphs 1 through 7 of Count One of the Indictment are incorporated as if fully set

7  forth herein.

8  ## I. **THE CONSPIRACY**

9  　　2.　　From at least in or about September 2004, through at least in or about February 2008, in

10  the State and Eastern District of California, defendants SERGIO ROMAN BARRIENTOS and

11  ZALATHIEL AGUILA, and others known and unknown to the Grand Jury, conspired to make false

12  statements to federally insured financial institutions, knowing those statements were false, for the

13  purpose of influencing the actions of those financial institutions, in violation of Title 18, United States

14  Code, Section 1014.

15  ## II. **MANNER AND MEANS**

16  　　In furtherance of the conspiracy, BARRIENTOS, AGUILA, and Anabo (collectively, "the

17  conspirators") employed the following manner and means, among others:

18  　　3.　　Paragraphs 9 through 16 of Count One of the Indictment are incorporated as if fully set

19  forth herein.

20  ## III. **OVERT ACTS**

21  　　In furtherance of the conspiracy and to accomplish its objects, the defendants, and others known

22  and unknown to the Grand Jury, committed and caused to be committed the following overt acts in the

23  State and Eastern District of California and elsewhere:

24  　　4.　　On or about April 15, 2006, Straw Buyers 1 and 2 stated on their loan application that

25  they intended to occupy 727 Highland Place in San Dimas, California, as their primary residence and

26  that no part of their down payment amount was borrowed.

27  　　5.　　On or about April 19, 2006, defendant BARRIENTOS provided the full down payment

28  for the purchase of 727 Highland Place in San Dimas, California, in the amount of $121,792.58, via a

1  cashier's check drawn on Washington Mutual account ending x2333 in the name of Sayraw Holdings,
2  over which defendant BARRIENTOS was the sole signatory.

3       6.      On or about April 27, 2006, defendant AGUILA endorsed and deposited a cashier's
4  check made out to Capital Access, LLC, for approximately $250,710.28, into a Travis Credit Union
5  account ending x8602-00. The check was signed by defendant BARRIENTOS and drawn on his
6  Washington Mutual Bank account ending x2333.

7       7.      On or about May 2, 2006, Quest Financial Services, Inc., deposited a check for
8  approximately $15,116.00 from Financial Title Company, into Travis Credit Union account ending
9  x7508-01.

10      8.      On or about June 20, 2006, Straw Buyers 1 and 2 faxed to Downey Savings & Loan
11 Association, F.A., a signed consent on granting Capital Access authorization to discuss loan information
12 for the loan on property at 727 Highland Place in San Dimas, California.

13      All in violation of Title 18, United States Code, Section 371.

14 COUNT SIX:  [18 U.S.C. § 1014 – False Statements on a Loan Application]

15      The Grand Jury further charges: T H A T

16                    SERGIO ROMAN BARRIENTOS, and
                         ZALATHIEL AGUILA,
17

18 defendants herein, on or about April 15, 2006, in the State and Eastern District of California, knowingly
19 made false statements and reports for the purpose of influencing the action of Downey Savings & Loan
20 Association, F.A., a financial institution the accounts of which were then insured by the Federal Deposit
21 Insurance Corporation, in connection with a mortgage loan application for 727 Highland Place, San
22 Dimas, California, in that the defendants presented and caused to be presented to Downey Savings &
23 Loan Association, F.A., a loan application stating that: (1) Straw Buyers 1 and 2 intended to occupy the
24 home as a primary residence, and (2) Straw Buyers 1 and 2 did not borrow any part of the down
25 payment for the purchase of the property and provided such down payment themselves, when in truth
26 and in fact, as the defendants then well knew, Straw Buyers 1 and 2 did not intend to occupy the home
27 as a primary residence, and the down payment money was provided by the defendants, in violation of
28 Title 18, United States Code, Sections 2 and 1014.

1

2

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2)(A) – Criminal Forfeiture]

3    1.    Upon conviction of one or more of the offenses alleged in Counts One and Five of this

4  Superseding Indictment, defendants SERGIO ROMAN BARRIENTOS and ZALATHIEL AGUILA

5  shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all

6  property, real and personal, which constitutes or is derived from proceeds traceable to such violations,

7  including but not limited to the following:

8        a.    A sum of money equal to the amount of proceeds traceable to such offenses, for

9  which defendants are convicted.

10    2.    Upon conviction of one or more of the offenses alleged in Counts Two through Four and

11  Six of this Superseding Indictment, defendants SERGIO ROMAN BARRIENTOS and ZALATHIEL

12  AGUILA shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property

13  constituting or derived from proceeds obtained directly or indirectly, as a result of said violations,

14  including but not limited to the following:

15        a.    A sum of money equal to the amount of proceeds obtained directly or indirectly,

16  as a result of such offenses, for which defendants are convicted.

17    3.    If any property subject to forfeiture as a result of the offenses alleged in Counts One

18  through Six of this Superseding Indictment, for which defendants are convicted:

19        a.    cannot be located upon the exercise of due diligence;

20        b.    has been transferred or sold to, or deposited with, a third party;

21        c.    has been placed beyond the jurisdiction of the court;

22        d.    has been substantially diminished in value; or

23        e.    has been commingled with other property which cannot be divided without

24            difficulty;

25  it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c),

26  incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants, up to the

27  value of the property subject to forfeiture.

28  ///

SUPERSEDING INDICTMENT                                    9

A TRUE BILL.

**/s/ Signature on file w/AUSA**

FOREPERSON

BENJAMIN B. WAGNER
United States Attorney

No. _ _ _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

### SERGIO ROMAN BARRIENTOS and
### ZALATHIEL AGUILA

## S U P E R S E D I N G   I N D I C T M E N T

**VIOLATION(S):**  18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud Affecting a Financial Institution and Bank Fraud; 18 U.S.C. § 1343 – Wire Fraud Affecting a Financial Institution (2 Counts); 18 U.S.C. § 1344(1) – Bank Fraud; 18 U.S.C. § 371 – Conspiracy to Make False Statements on Loan Applications; 18 U.S.C. § 1014 – False Statements on Loan Application; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2)(A) - Criminal Forfeiture

*A true bill,*

## /s/ Signature on file w/AUSA

*Foreman.*

*Filed in open court this* _ _ _ _ 14 _ _ _ _ _ _ _ _ *day*

*of* _ _ April _ _ _ _ _ _ _, *A.D. 20* 16

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk.*

**NO PROCESS NECESSARY**
as to △ Barrientos

Summons as to
△ Aguila –
bail TBD at IA

*Bail, $* _ _ _ _ _ _ _ _ _ _ _ _

GPO 863 525

**United States v. SERGIO ROMAN BARRIENTOS and ZALATHIEL AGUILA**
**Penalties for Indictment**

**Defendants**
**SERGIO ROMAN BARRIENTOS and ZALATHIEL AGUILA (ALL COUNTS)**

## COUNT ONE

VIOLATION:         18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud Affecting a
                   Financial Institution and Bank Fraud

PENALTIES:         30 years imprisonment, $1,000,000, 5 years supervised release

SPECIAL ASSESSMENT:  $100 (mandatory on each count)

## COUNTS TWO AND THREE

VIOLATION:         18 U.S.C. § 1343 – Wire Fraud Affecting a Financial Institution

PENALTIES:         30 years imprisonment, $1,000,000 fine, 5 years supervised release

SPECIAL ASSESSMENT:  $100 (mandatory on each count)

## COUNT FOUR

VIOLATION:         18 U.S.C. § 1344(1) – Bank Fraud

PENALTIES:         30 years imprisonment, $1,000,000 fine, 5 years supervised release

SPECIAL ASSESSMENT:  $100 (mandatory on each count)

## COUNT FIVE

VIOLATION:         18 U.S.C. § 371 – Conspiracy to Violate § 1014

PENALTIES:         5 years imprisonment, $250,000 fine, 3 years supervised release

SPECIAL ASSESSMENT:  $100 (mandatory on each count)

## COUNT SIX

VIOLATION:         18 U.S.C. § 1014 – Making False Statements on Loan Applications

PENALTIES:         30 years imprisonment, $1,000,000 fine, 5 years supervised release

SPECIAL ASSESSMENT:  $100 (mandatory on each count)

## **FORFEITURE ALLEGATION**

VIOLATION:      18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2)(A)  – Criminal Forfeiture

PENALTIES:      As stated in the charging document